UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**G.P.**

    v.                                            Case No. 1:23-cv-322-PB
                                                           Opinion No. 2024 DNH 001

**Merrick B. Garland, U.S. Attorney General, et al.**

## MEMORANDUM AND ORDER

The petitioner in this habeas corpus case is a noncitizen who is subject to a reinstated removal order. The government has detained the petitioner while he litigates his claim that the Convention Against Torture (CAT) bars his removal to his home country. The sole issue before the court, which is presented on cross-motions for summary judgment, is whether the petitioner is entitled to immediate release based on the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001). For the reasons set forth in this Memorandum and Order, I grant the government's motion for summary judgment and deny the petitioner's cross-motion.

### I.    BACKGROUND

G.P. is a fifty-year-old citizen of the Dominican Republic who first unlawfully entered the United States in 1993. Doc. 4 at 4. Shortly after he arrived, G.P. was arrested on drug trafficking charges. Id. He was later convicted and sentenced to seventeen years in prison. Id.

In 2003, while G.P. was serving his prison sentence, he was charged with removability under 8 U.S.C. §§ 1182(a)(6)(A)(i) (entering the United States without inspection), (a)(7)(A)(i)(I) (failing to possess a valid immigration document), (a)(2)(A)(i)(II) (having been convicted of a controlled substance violation), and (a)(2)(C) (having reason to believe he was a controlled-substance trafficker). Doc. 15-1 at 4. In February 2004, an immigration judge (IJ) sustained the charges against G.P. and ordered his removal to the Dominican Republic. Id.; Doc. 4-2 at 195-96. After G.P. completed his criminal sentence, he was placed in immigration detention while the government procured his travel documents. Doc. 15-1 at 5. In January 2011, he was removed to the Dominican Republic. Id.; see Doc. 4-2 at 194.

G.P. unlawfully returned to the United States in 2017 and became involved in a large fentanyl trafficking organization led by Sergio Martinez. Doc. 4 at 4. He was later arrested and charged for his role in the scheme, along with Martinez and more than thirty other individuals. Id. G.P. subsequently entered into a cooperation agreement and testified against Martinez at trial. Id. During G.P.'s testimony, Martinez abandoned the trial, pleaded guilty, and received a forty-five-year prison sentence. Id. Although G.P. also pleaded guilty to multiple drug charges, he was sentenced to only

three years in prison, in part because of his cooperation. Id.; see Doc. 4-2 at 167.

When G.P. completed his second prison sentence in October 2020, the government reinstated his original removal order and continued to detain him.[1] Doc. 15-1 at 4; Doc. 4-2 at 85, 194. Soon thereafter, G.P. informed the government of his fear of returning to the Dominican Republic. Doc. 4 at 4. The government referred him to an asylum officer for a reasonable fear interview, and the officer determined that G.P.'s fear was credible.[2] Doc. 15-1 at 6; Doc. 4-2 at 200-215. He was then referred to an IJ for withholding-only proceedings to determine whether he was entitled to deferral of removal under the CAT.[3] Doc. 15-1 at 6; Doc. 4-2 at 198-199.

---

[1] When a noncitizen reenters the United States without authorization after having been removed, he is subject to the expedited removal process set forth in 8 U.S.C. § 1231(a)(5). Under this provision, a noncitizen's "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." Id.

[2] Reasonable fear interviews are provided to noncitizens who express a fear of returning to their country of removal during the removal or reinstatement processes but who, by virtue of their reinstated removal orders, are only eligible for withholding of removal or CAT relief. Rivera-Medrano v. Garland, 47 F.4th 29, 33 n.3 (1st Cir. 2022).

[3] The CAT prohibits a noncitizen from being returned to his home country "where there are substantial grounds for believing that he would be in danger of being subjected to torture." Convention Against Torture, 1465 U.N.T.S. 85 (1984). A noncitizen may not be removed from the United States to his home country if he can demonstrate "that it is more likely than not

An IJ held a hearing on G.P.'s CAT claim over the course of several days between December 2, 2020, and March 30, 2021. Doc. 4-1 at 131-346. During the hearing, G.P. testified that he feared retaliation by government officials and Martinez's affiliates because of his testimony in the Martinez case and status as a criminal deportee. Doc. 4-1 at 115; G.P. v. Garland, No. 21-2002, 2023 WL 4536070, at *1 (1st Cir. July 13, 2023). He also called an expert witness on Dominican Republic country conditions, Dr. David Brotherton, who "testified extensively about the treatment removed criminals face in the Dominican Republic . . . as well as about extrajudicial killings by police, government corruption by cartels, and the consequences that members of criminal organizations face for cooperating with the government." G.P., 2023 WL 4536070, at *2; see Doc. 4-1 at 125-27.

The IJ denied G.P.'s CAT claim in an April 2021 decision. Doc. 4-1 at 109-18. Although the IJ determined that G.P. and Dr. Brotherton were both credible witnesses, he assigned "limited weight" to Dr. Brotherton's testimony and concluded that the remaining evidence was "too speculative" to support G.P.'s claim. Id. at 125-27. In reaching these conclusions, the IJ discounted Dr. Brotherton's expertise on country conditions in the Dominican Republic because he lacked "recent first-hand knowledge, research, or

---

that he . . . would be tortured" there. 8 C.F.R. § 1208.16(c) (2023); see also 8 C.F.R. § 208.16(c) (2023).

4

connections in the Dominican Republic." Id. at 125. He similarly concluded that Dr. Brotherton's opinion as to G.P.'s risk of torture was not persuasive because he lacked direct knowledge of the risk posed by the Martinez group. Id. at 127. G.P. appealed the IJ's decision to the Board of Immigration Appeals (BIA), which dismissed his challenge in December 2021. Id. at 6-12. G.P. then appealed the BIA's decision to the First Circuit, Doc. 5, and that court stayed his removal pending its review of his CAT claim, Doc. 4-8.

In July 2023, the First Circuit vacated the BIA and IJ's decisions and remanded the case for further proceedings, finding that the IJ had improperly discounted Dr. Brotherton's testimony. G.P., 2023 WL 4536070, at *1, *8. The court disagreed with the IJ's finding that Dr. Brotherton's country conditions expertise was "stale" in light of the undisputed evidence that conditions in the Dominican Republic had not substantially changed since Dr. Brotherton acquired his expertise. Id. at *5. The court also determined that the IJ should have credited Dr. Brotherton's testimony even though he did not have "direct knowledge" of the Martinez group because, as an expert, Dr. Brotherton was entitled to base his opinions on the undisputed evidence supplied by G.P. about the group. Id. at *7. Accordingly, the court concluded that "[i]n deciding whether G.P. is entitled to relief on remand, Brotherton's testimony should be afforded full weight." Id. at *8.

While his appeal was still pending, G.P. filed a motion for temporary release with the First Circuit. See Doc. 1; Doc. 4. That court transferred the motion to this court in June 2023 with instructions to treat it as a habeas corpus petition under 28 U.S.C. § 2241(b). June 15, 2023 Docket Entry. The parties then filed cross-motions for summary judgment in August 2023. Doc. 17; Doc. 18.

## II.   STANDARD OF REVIEW

Summary judgment is warranted when the record shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). A "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A "genuine dispute" exists if a factfinder could resolve the disputed fact in the nonmovant's favor. Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate

"specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a trier of fact could reasonably resolve that issue in its favor." Irobe, 890 F.3d at 377 (cleaned up) (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). If the nonmovant fails to adduce such evidence, the motion must be granted. Celotex, 477 U.S. at 324. In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018). On cross-motions for summary judgment, the standard of review is applied "to each motion separately." See Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

## III.   ANALYSIS

G.P. is being detained pursuant to 8 U.S.C. § 1231(a)(6). In Zadvydas, the Supreme Court construed § 1231(a)(6) narrowly to limit the government's detention authority when a noncitizen faces the prospect of indefinite detention because there is no significant likelihood that he will be removed in the reasonably foreseeable future. 533 U.S. at 701. The issue presented by G.P.'s habeas corpus petition is whether Zadvydas applies to noncitizens, like him, who are engaged in ongoing efforts to challenge their return to their home country.

7

## A.     Detention During Removal Proceedings

The Immigration and Nationality Act, codified at 8 U.S.C. § 1101 et seq., includes several provisions that authorize the government to detain noncitizens who are subject to removal. Before a removal order is issued, the government's detention authority is governed by 8 U.S.C. § 1226. But once a noncitizen is "ordered removed," that authority shifts to 8 U.S.C. § 1231. Section 1231(a)(1)(A) establishes a ninety-day "removal period" during which the noncitizen must be detained.[4] If, however, the government is unable to remove the noncitizen during the removal period, he ordinarily must be released under supervision pursuant to § 1231(a)(3). Notwithstanding this general directive, § 1231(a)(6) provides that a noncitizen "may be detained beyond the removal period" if he (1) is inadmissible, (2) has violated his nonimmigrant status or conditions of entry, (3) has been previously convicted of certain crimes, including most controlled substance offenses, (4) is removable for national security or foreign policy reasons, or (5) has been deemed a risk to the community or unlikely to comply with the removal order by the Attorney General.

Zadvydas addressed the consolidated habeas corpus petitions of two noncitizens who were subject to final removal orders but faced the prospect of

---

[4]     The removal period begins to run on the latest of: (1) the date the order of removal becomes "administratively final"; (2) if a court reviewing the

8

permanent detention pursuant to § 1231(a)(6) because the government could not find a country to accept them. 533 U.S. at 684-86. There, the Court framed the issue as whether § 1231(a)(6) "authorizes the Attorney General to detain a removable alien <u>indefinitely</u> beyond the removal period or only for a period <u>reasonably necessary</u> to secure the alien's removal." Id. at 682 (emphasis in original). In answering that question, the Court construed § 1231(a)(6) to include an "implicit 'reasonable time' limitation" that was required to avoid the "serious constitutional concerns" that would otherwise arise if noncitizens could be detained indefinitely after removal proceedings had come to an end. Id. As the Court explained the new limitation, if a noncitizen has been detained for more than six months, and he provides "good reason to believe that there is no significant likelihood of removal in the foreseeable future," then the noncitizen must be released under supervision unless the government can rebut the noncitizen's showing. Id. at 701. "[A]s the period of prior postremoval confinement grows," the Court noted, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

---

removal order stays removal, "the date of the court's final order"; or (3) if the noncitizen is detained for nonimmigration-related reasons, "the date the alien is released from detention or confinement." § 1231(a)(1)(B). A reinstated removal order becomes administratively final when it is reinstated. Johnson v. Guzman Chavez, 594 U.S. ---, 141 S. Ct. 2271, 2284 (2021).

## B. G.P.'s Argument

G.P. has been detained for more than three years as he awaits the resolution of his CAT claim. Unlike the petitioners in Zadvydas, however, he does not face the prospect of indefinite detention. If his claim fails, he will be removed to the Dominican Republic. If it succeeds, the government will have to release him unless it can promptly find another country to accept him. G.P. nevertheless argues that he does not need to wait to claim his right to immediate release because Zadvydas's reasonable time limitation applies at any point during the removal process so long as a noncitizen can show there is no significant likelihood that he will be removed in the reasonably foreseeable future. See Doc. 18-1 at 3. He then argues that he is entitled to be released now because he has already been detained for more than three years, he faces a long period of additional detention, and the First Circuit's remand order will eventually require the IJ to grant his CAT claim, leaving the government with no ability to remove him to the Dominican Republic or, potentially, anywhere else. Id. at 3, 8, 11. I am unpersuaded by G.P.'s arguments because Zadvydas does not apply to cases like his where there is no prospect of indefinite detention.

The Zadvydas Court adopted a narrow reading of the government's detention authority under § 1231(a)(6) to address the serious constitutional concerns that arise when the government seeks to detain noncitizens who are

10

subject to removal orders but cannot be removed because no country will accept them. As the Court noted, detention during the removal process can be justified to the extent that it serves two goals: "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." Id. at 690 (cleaned up). Once removal proceedings have concluded, however, the first justification fades away. Id. Although the second justification continues to be a legitimate concern even when detention may be permanent, that concern can ordinarily justify permanent detention only if the risk to the community is severe, the authority to detain is subject to strong procedural protections, and special circumstances such as mental illness increase the danger to the community. Id. at 691. Accordingly, when a statute authorizes the government to indefinitely detain a noncitizen without any special evidence of dangerousness and only minimal procedural protections, neither assuring the noncitizen's appearance at future immigration proceedings nor protecting the public can justify his indefinite detention, and any statute that authorizes such detention is constitutionally suspect. Id. at 692.

Construing § 1231(a)(6) to authorize detention while withholding-only proceedings are ongoing ordinarily does not present the same constitutional concerns that the Court faced in Zadvydas. Because proceedings have not ended, the government retains a strong interest in ensuring the noncitizen's

11

presence at future proceedings. And because the detention will end when the noncitizen is granted or denied withholding-only relief, the constitutional concerns presented by a noncitizen's temporary detention are less compelling. Accordingly, I follow those courts that have declined to extend Zadvydas to cases where a noncitizen is engaged in ongoing immigration proceedings. See e.g. Martinez v. LaRose, 968 F.3d 555, 565 (6th Cir. 2020) (detention pursuant to § 1231(a)(6) pending withholding-only proceedings); Prieto-Romero v. Clark, 534 F.3d 1053, 1065 (9th Cir. 2008) (detention pursuant to § 1226(a) pending judicial review of his removal order); Soberanes v. Comfort, 388 F.3d 1305, 1311 (10th Cir. 2004) (detention during ongoing effort to reopen removal proceedings); Obikanye v. I.N.S., 78 F. App'x 769, 772 (2d Cir. 2003) (detention during pendency of asylum and withholding only proceedings); Castellanos v. Holder, 337 F. App'x 263, 267-68 (3rd Cir. 2009) (detention during ongoing challenge to removal); Cabrera Galdamez v. Mayorkas, No. 22 Civ. 9847, 2023 WL 1777310, at *8 (S.D.N.Y. Feb. 6, 2023) (detention under § 1231(a)(6) pending the resolution of withholding-only proceedings); Mezan v. U.S. Dep't of Homeland Sec., 2019 DNH 175, 2019 WL 4804804, at *3 (D.N.H. Oct. 1, 2019) (detention under § 1231(a)(6) pending efforts to challenge removal order).

      G.P. nevertheless argues that he is entitled to immediate release even if Zadvydas generally does not apply when withholding-only proceedings are

ongoing because the First Circuit's remand order makes it so likely that he will prevail on his CAT claim that I should conclude that his removal to the Dominican Republic is no longer reasonably foreseeable. Doc. 18-1 at 9-10. I am unpersuaded by this argument. Although I agree that the First Circuit's direction to the IJ to give "full weight" to Dr. Brotherton's testimony on remand makes it more likely that he will prevail, his success is not guaranteed, and I am in no position to speculate as to how the hearing on remand will unfold. Accordingly, I decline to grant G.P. the relief he seeks at the present time.

In rejecting G.P.'s Zadvydas claim, I do not leave noncitizens who are detained during protracted withholding-only proceedings without a means to challenge the lawfulness of their detention. Zadvydas is a statutory construction case. Noncitizens who have been detained during lengthy withholding-only proceedings retain the right to challenge their detention on constitutional grounds even though their proceedings are ongoing. See e.g. Cabrera Galdamez, 2023 WL 1777310, at *7-8 (rejecting the petitioner's Zadvydas claim but finding a right to a bond hearing based on the Due Process Clause). Moreover, when a court addresses a Zadvydas claim, the only remedy the court can produce is immediate release under conditions. See Johnson v. Arteaga-Martinez, 596 U.S. 573, 583 (2002) (rejecting a claim that Zadvydas entitled the petitioner to a bond hearing before an IJ). In contrast,

13

when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. See e.g., Cabrera Galdamez, 2023 WL 1777310, at *7-8. Because, however, G.P. has made a deliberate decision not to assert a constitutional claim, I need not determine what procedural protections noncitizens are entitled to when they face prolonged detention while removal proceedings are ongoing.

## IV.    CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (Doc. 17) is granted, and petitioner's motion (Doc. 18) is denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

January 29, 2024

cc:    Counsel of Record